BOEHM, Justice,
concurring.
I concur in the majority opinion. I write separately to respond to some points that Justice Dickson makes.
First, and obviously, we hold today only that the discounted price actually paid for medical services is admissible evidence as to the reasonable value of those services. We do not hold that it is conclusive. Evidence Rule 413 provides that the bills for a medical service are admissible and are "prima facie evidence" of the reasonable price for the service. Prima facie evidence is not conclusive and may be rebutted by other evidence. The issue thus is simply whether the discounted prices from sticker prices for today's medical services are relevant under the Rules of Evidence. I think it is obvious that they are, because they reflect the amounts that the providers are willing to accept for their services. As we all know, most but not all Americans have some form of employer or group based health insurance. See Carmen De-Navas-Walt, Bernadette D. Proctor & Jessica C. Smith, U.S. Census Bureau, Income, Poverty, and Health Inswrance Coverage in the Umited States: 2007 at 19 (2008), available at http://www.census.gov/ prod/2008pubs/p60-235.pdf ("The percentage of people covered by employment-based health insurance [was] 59.3 in 2007. ..."). And, as the majority opinion explains, many of these plans include prices that are not trivially discounted from the stated price that is rarely collected. Transactions at these discounted prices presumably constitute the majority *860 in the market for any service provided by physicians or hospitals, and in any case constitute a sizable share of all transactions. Because these discounted prices are the bulk of all pricing for a given service, I cannot conclude that they are irrelevant to determining the reasonable price of that service.
Second, some managed health care programs confer some or all of the benefits to health care providers that Justice Dickson identifies as hidden additions to the discounted price to reach the real reasonable value of the services provided. But some of these-prompt payment and avoiding collection costs-are provided by credit card companies for relatively insignificant charges compared to the discounts from sticker price for many health care services. I do not believe the most important of these-access to a large population-is properly considered as a benefit conferred by the third party on the health care provider. Rather, it is something the insured and the insurer have arranged to pool their bargaining power against the provider, and the provider has agreed to sell at that bargained price. Moreover, many, including many of the largest insurers, do not control the insured's selection of the provider. By obtaining reduced prices for their insureds, they encourage the insureds to choose a participating provider, and by presenting this large pooled bargaining power, they obtain lower prices from the providers. But that does not suggest that these prices are not reasonable. To the contrary, because the majority of transactions occur at those prices, unless the providers are mispricing their services, these prices should be those that provide a reasonable compensation to the provider.
Third, Justice Dickson identifies a number of complexities he sees in establishing the reasonable price for the service if we do not take the sticker price as conclusive by holding inadmissible evidence of the discounted price. But if we were to choose between the sticker price that most people do not pay and the discounted price that most people do pay, we should hold that the sticker price is to be excluded from evidence as the less realistic evidence of the reasonable value of these services that the real market for them reflects. CL James McGrath, Overcharging the Uninsured in Hospitals: Shifting a Greater Share of Uncompensated Medical Care Costs to the Federal Government, 26 Quin-nipiac L.Rev. 173, 185 (2007) {noting that health care payment systems have rendered hospitals list prices "relatively meaningless").
SHEPARD, C.J., joins.